This appeal is from a final divorce decree. The appellant, Daniel L. Roberts, petitioned the Circuit Court of Madison County for a divorce from the appellee, Nell D. Roberts on the ground of incompatibility of temperament. Mrs. Roberts filed a counterclaim in which she also sought a divorce on the *Page 23 
ground of incompatibility of temperament. Mrs. Roberts' counterclaim sought alimony from her husband and a division of the couple's jointly owned property.
After the oral testimony of both Mr. and Mrs. Roberts was presented to the trial court, the court divorced the parties on the ground of incompatibility of temperament and distributed the couple's property in the following manner: (1) the family residence, valued at approximately $40,000-$50,000, was awarded to the wife and she was obligated to pay the mortgage indebtedness ($12,600) and ad valorem taxes on this property; (2) a second parcel of property (valued at approximately $30,000) which was jointly owned by the parties was ordered to be sold within six months of the divorce and the proceeds from this sale divided equally between Mr. and Mrs. Roberts; (3) the husband was awarded a 1968 Dodge automobile which he generally drove while the wife received a 1964 Plymouth automobile which she customarily used; (4) six shares of common stock in Computer Science Corporation which was held jointly by the parties was divested from the husband and placed under the sole ownership of the wife; and (5) the wife was awarded most of the household furniture and appliances while the husband received various tools and recreational equipment. In addition to the distribution of property noted above, the court also ordered the husband to make a lump-sum alimony payment in the amount of $2,000. Moreover, he was required to furnish additional alimony payments to the wife in the sum of $300 a month for forty-eight months (or until her death or remarriage). From the trial court's judgment the husband appeals, contending that the division of the parties' common estate and the award of alimony was arbitrary and excessive.
The position taken by the husband on appeal is that the trial court erred in its judgment in two respects. First, he argues that the trial court awarded the wife more alimony and property than she asked for in her counterclaim (or testified at trial that she needed). He further asserts that the excessiveness of the award rendered is aptly demonstrated by the fact that the wife contributed to the breakdown of the couple's marriage. Second, the husband contends that the trial court abused its discretion in awarding alimony to the wife since the evidence at trial demonstrates that the alimony would be used for the educational support of the parties' adult daughter rather than for the subsistence of the wife.
In respect to the first of the husband's aforementioned contentions, it is necessary to again recognize the well-established principle that a divorce decree is presumed correct in instances where testimony is taken orally before the trial court. And this presumption is overcome only when the reviewing court determines from an examination of the record before it that the trial court's decree is unsupported by, or contrary to, the evidence presented at trial.
In the present case the record reveals that Mr. and Mrs. Roberts were married approximately twenty-one years before they were divorced in 1977. They had lived apart, however, since 1975. A daughter was produced as a result of the marital union and she resided with her mother at the time of the divorce. Although she was nineteen when her parents' marriage was dissolved, the trial transcript indicates that she planned to continue to live with her mother (appellee) until she (the daughter) completed her college education at the University of Alabama at Huntsville.
At the time of the divorce hearing both parties were in their mid-forties and apparently in good health. The wife, however, suffers from low blood sugar or hypoglycemia. This condition is controlled by a special diet.
The wife graduated from Berry College in 1952. She taught school for a time, but upon marrying her husband she left her job as a school teacher and began working for General Electric where he was also employed. The wife worked for approximately a year before she became pregnant with the couple's daughter and left her employment with General Electric. The wife continued to remain at home and care for the parties' child throughout most of her marriage *Page 24 
to Mr. Roberts. She did, however, work each year as a sales person during the Christmas shopping season. In 1974 Mrs. Roberts obtained a job with a small business college where she taught for several months. In late 1974 she began working for the Office of Education and she was employed with this agency at the time of the divorce.
Mrs. Roberts earns approximately $9,000 a year from this employment but the continuation of her job with the Office of Education is contingent upon the agency's renewal of the particular project on which she is working. She is, however, entitled to approximately $800 in Alabama Teacher's Retirement Benefits.
At one time the wife (Mrs. Roberts) held a Georgia teaching certificate but this certificate has now expired. She does not have a certificate which would enable her to teach in Alabama and any attempt to obtain such a certificate would require that she take additional college courses.
On the other hand, Mr. Roberts holds an undergraduate degree in electronics. As stated earlier, he was working as an electrical engineering assistant for General Electric when he married Mrs. Roberts. In 1963 he left General Electric and became an oceanographer for the United States Civil Service. Three years later he terminated his employment with the government and began working for the Computer Science Corporation in Huntsville. In 1973 he again changed jobs and went to work for Sperry-Rand Corporation. At the time of the parties' divorce he had left Sperry-Rand and was about to begin employment with Boeing, Inc. in Seattle, Washington. His salary while with Sperry-Rand was approximately $20,500 a year. He was also entitled to receive almost $3,000 in retirement benefits upon termination of his employment with Sperry-Rand. In his new capacity of specialist engineer with Boeing, Inc. he will receive a salary of approximately $21,600 a year. Although Mr. Roberts works primarily as an electrical engineer, he is also qualified to work as an oceanographer and a computer programmer.
The parties enjoyed a moderate standard of living throughout their marriage. This was due in part to the fact that they lived frugally. Testimony at trial indicated that the wife drove a 1964 Plymouth Valiant automobile which had 170,000 miles on it. This car was valued at $200 and frequently required repair. The husband also drove a car which had been driven a substantial number of miles. The 1968 Dodge Charger which he used contained 136,000 miles and was valued at $700. All the appliances (including the television set, the washer, and the refrigerator) which were owned by the parties were over fifteen years old, the sole exception being the couple's freezer which was five years old. Furthermore, the wife testified that the family residence was in need of substantial repair.
In addition to the family residence, the parties also owned a second parcel of real property. A house was located on this property and the house and lot together produced a rental income of approximately $165 a month. After the parties separated the husband retained most of the rental income to pay for his own housing expenses. Nevertheless, both the rental property and the family residence were owned jointly by Mr. and Mrs. Roberts. The trial court's decree ordered that the wife meet the mortgage payments on the latter property. The mortgage indebtedness on the couple's home was approximately $12,600. The court also decreed that the rental property was to be sold and the proceeds from the sale divided equally between the parties.
On appeal, appellant-Daniel Roberts contends that the trial court's award of alimony and property was excessive in that appellee-Nell Roberts received more than she originally sought.
The counterclaim filed by Mrs. Roberts asked the court to award her both pieces of real estate as "partial lump sum alimony;" her counterclaim also sought a "reasonable sum" as periodic alimony. At trial she testified that she needed approximately $725 a month to maintain herself. Moreover, it is evident from the age and condition of the Valiant automobile and the various household *Page 25 
appliances which were awarded to the wife that these items will either have to be repaired or replaced in the near future. In addition, the wife testified that she would have to pay the expense of repairing the house in which she resides.
As both the pleadings and testimony at trial demonstrate, the wife asked for no specific amount of alimony. She did seek periodic alimony and the parties' jointly owned realty. The trial court awarded her $300 a month in periodic alimony,[1] the family residence, one-half of the proceeds from the sale of the couple's rental property, some personal property and a $2,000 lump-sum payment of alimony. There is nothing in the record before us which indicates that this award exceeded what the wife was demanding in alimony payments and the division of the couple's property, both real and personal. Consequently, it cannot be said that the trial court awarded the wife more than she asked for as alimony. Nor are we persuaded that the amount of alimony awarded and the division of the couple's jointly owned property by the trial court was clearly excessive or arbitrary.
Furthermore, we have examined the record carefully to determine whether the wife's contribution to the cause of the divorce was such that she is not entitled to the alimony awarded her. We find that it was not.
The divorce was granted on the basis of incompatibility and the actual reasons for the inability of the parties to live together were apparently the husband's unwillingness to acquiesce to his wife's demands that he perform more work around the house, that he increase the frequency of their social engagements, and that he spend more time at home with her. In fact, the husband testified that his wife expected him to be "three persons."
Complaints such as those expressed by the husband in this case are common to many marriages which end in divorce but they do not constitute "misconduct" warranting an abridgment of the wife's claim to an allowance for alimony. See Pope v. Pope,268 Ala. 513, 109 So.2d 521 (1958); Tyler v. Tyler, 52 Ala. App. 430, 293 So.2d 856 (1974). Thus we do not believe that the wife's contribution to the breakdown of the parties' marriage was such that the trial court palpably abused its discretion in the amount of alimony which it awarded her.
The second and final issue presented for review concerns the husband's contention that the trial court erred in awarding alimony to the wife since the evidence taken at trial demonstrates that the monthly alimony payments of the husband would be used for the educational support of the parties' adult daughter.
There is nothing in the record to support the husband's contention in regard to this matter. Indeed, his argument is premised on two exchanges which occurred during the divorce hearing. In the first exchange the husband testified that since his wife and he had separated in 1975, he had provided her with $300 a month for the specific purpose of maintaining and educating their then-minor daughter. The second exchange involved the fact that the court overruled an objection made by the counsel for the husband when the wife's attorney asked Mr. Roberts how frequently he had seen his daughter subsequent to his separation from his wife. The court stated that it would allow an answer on the grounds that such testimony would be relevant to the issue of incompatibility.
On the basis of these two occurrences during the trial the husband argues that the $300 awarded to the wife as monthly alimony was actually a subterfuge used by the court to force the husband to provide his adult daughter with support.
In Godec v. Godec, Ala.Civ.App., 346 So.2d 459 (1977), this court held that periodic alimony is for the wife's support and maintenance and that an award of such alimony cannot be increased in order to provide an adult child with economic or educational support. However, either the testimony presented at trial or the trial court's decree must indicate that the *Page 26 
amount of alimony awarded was actually for the support of the child rather than for the maintenance of the wife. Godec v.Godec, supra. Moreover, it is an oft stated principle that a party who complains of an error by the trial court must affirmatively demonstrate from the record that an error was indeed committed. Citizens Bank v. Routh, Ala.Civ.App.,351 So.2d 594 (1977). Otherwise the presumption will be that the decision or award of the trial court is correct. Citizens Bankv. Routh, supra. In the instant case the record does not affirmatively show that in either instance alluded to by the husband that the trial court used the periodic alimony which it awarded to the wife to compel the husband to support his adult child or that the $300 to be received by the wife each month is in reality an educational allowance for the couple's daughter.
From the record before this court we are not persuaded that the trial court palpably abused its discretion or clearly erred in the amount of alimony awarded or the division of property which was made. Therefore, we affirm.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] See Banks v. Banks, Ala.Civ.App., 336 So.2d 1365 (1976).